**UNITED STATES, Appellant**

v.

**Anthony M. ANTONELLI, Senior Airman U.S. Air Force, Appellee.**

No. 66843.
CMR No. 28856.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 13, 1994.

Decided Sept. 28, 1995.

For the Accused: *Lieutenant Colonel Joseph L. Heimann* (argued); *Colonel Jay L. Cohen* and *Major George F. May* (on brief); *Captain Richard D. Desmond.*

For the United States: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

WISS, Judge:

1. This case is before us a second time via a certificate from the Judge Advocate General, asking us to consider the correctness of the decision of the Court of Military Review* as to certain questions of law addressed by that court. 38 MJ 445. *See* Art. 67(a)(2) and (c), Uniform Code of Military Justice, 10 USC § 867(a)(2) and (c) (1989).

*See 41 MJ 213, 229 n. * (1994).

As painful as it is, we conclude that appellate review of this case must be extended still longer because the Court of Military Review, in its opinion on remand, did not acknowledge and apply the announced law of this Court. Now, we will make clear precisely the scope of that court's task on further review so that this case, at some point, can come to statutory conclusion. *See* Arts. 66 and 67, UCMJ, 10 USC §§ 866 and 867, respectively.

## I

2. We will not reiterate fully the facts giving rise to this court-martial or the evolution of the appellate litigation; all that is reported in our opinion on initial review of this case, *see* 35 MJ 122 (1992), and in the opinion of the Court of Military Review on remand, *see* 37 MJ 932 (1993).

3. In a nutshell, this case involves a servicemember who accepted basic allowance for quarters (BAQ) and variable housing allowance (VHA), each at the "with dependent" rate, which is higher than the "without dependent" rate; who, when asked on an Air Force form whether he had "provided adequate support for" his dependents in the relevant time period, checked the box and thereby indicated that he had (even though the form advised him that "[f]ailure to recertify will result in ... a possible retroactive collection...."); but who, notwithstanding, had not paid one dime of the allowances for his dependent's support.

4. After an extensive analysis of the scope of the military's larceny statute, *see* Art. 121, UCMJ, 10 USC § 921, and its application to the facts of this case in light of the original unpublished opinion of the Court of Military Review, we remanded this case to that court "for further action consistent with this opinion." 35 MJ at 129. Specifically, as the court correctly framed its task in its remand opinion, we directed the Court of Military Review "to take another look at appellant's recertification documents and consider whether a wrongful withholding might arise from a bailment or wrongful conversion of the 'with dependent' BAQ." 37 MJ at 934. We did so in the context of the following holding, which constituted the critical legal predicate to our answering the certified issues then before us:

> The allowances in question were property of the United States that had been delivered to Antonelli solely to defray the financial burden of supporting a dependent child. Such an allowance is not salary and is clearly distinguishable from salary. Inasmuch as Antonelli was in fact *not* paying support for his daughter, he was not entitled to the allowances therefor; *thus, those monies remained the lawful property of the United States.*

35 MJ at 127–28 (footnote omitted; second emphasis added).

5. In acting under the remand, the court below acknowledged our resolution of this legal issue, as follows: "In sending this case back to us, the Court of Military Appeals opined that, since [the accused] was not entitled to the 'with dependent' payments, the money from those payments remained the property of the United States." 37 MJ at 938. Nonetheless, after a lengthy legal analysis of its own, that court apparently purported to hold to the contrary, writing, "We cannot find any authority to support a government retention of title to BAQ or VHA payments after they are paid to a military member." 37 MJ at 942. Of course, this does not acknowledge the fact that our opinion remanding the case to that court was, itself, such authority—indeed, binding authority. Then, on the basis of its incorrect view of the applicable law, the court concluded, "We find insufficient evidence of either a duty to account or a wrongful conversion of the with dependent's BAQ and VHA...." *Id.* at 942.

## II

6. Had the court below reached its findings as to the sufficiency of the evidence by applying the legal principle that was central to our decision to remand, as noted above, that may well have been the end of the appellate life of this case. It did not do so, however, so the case lives on.

7. We will not recapitulate our original analysis that led to our holding; in the course of considering the issues certified to us here, which go to the correctness of the Court of Military Review's failure to acknowledge that principle, we have confirmed for ourselves the soundness of that analysis. *Accord United States v. Bulger*, 41 MJ 194, 196 (CMA 1994) (After quoting from *United States v. Antonelli*, 35 MJ at 127–28, this Court stated: "Thus, entitlement to BAQ and VHA at the higher 'with dependent' rate is premised on establishment of the 'dependent' *and* a servicemember's support of the dependent."). We will pause, however, for brief comment on certain aspects of the reasoning of the court below in order to ensure that the precedential value of that published opinion may be measured appropriately.

8. Citing various provisions of the United States Code and the Department of Defense Pay and Allowances Entitlements Manual (DODPM), the opinion below portrays a servicemember's entitlement to allowances at the elevated with-dependent rate as a legal right if the servicemember has a "qualifying dependent" and then includes within that term an "unmarried child under 21 years of age." 37 USC § 401(a)(2). 37 MJ at 939. Somewhat in contrast, however, paragraph 30236.b. of DODPM provides as follows:

> A member is not entitled to BAQ on behalf of a dependent the member refuses to support or does not support. The statutory purpose of with dependent rate BAQ is to at least partially reimburse service members for the expense of providing private quarters for their dependents when government quarters are not furnished, and not to grant the with dependent rate of BAQ as a bonus merely for the technical status of being married or a parent.

In other words, it is the familial relationship *and* the fact of actual financial support that "entitle[s]" the servicemember to the elevated rate of allowances. *United States v. Bulger, supra.*

9. Then, after noting that such a servicemember "only has to furnish evidence of the required dependency," the court indicated that "proof of support is not generally re-

quired," though the elevated allowance "will be terminated if the servicemember does not continue to provide support for the spouse or children." 37 MJ at 939, citing para. 30236.a., DODPM. Again, however, DODPM adds a different spin on this picture.

10. Paragraph 30236.a. notes that, while proof of actual support of a dependent "is generally not required[,] . . . proof of support . . . will be required" if "a complaint of non-support or inadequate support is received from or on behalf of a dependent, . . . ." In other words, whenever there is reason to believe that the servicemember may not be furnishing the support for which he has been given allowance, he will be called to account. And if it then appears that support in fact has not been furnished, future elevated allowances will be cut off "and recoupment for periods of nonsupport or inadequate support" will occur.

11. The court below took the view that a servicemember who in fact does not support his dependent but who accepts the allowances at the with-dependent rate simply is indebted to the United States and is not guilty of larceny of the added allowances. Assuming the soundness of that proposition for present purposes, it does not lead to a similar conclusion of non-criminality when that member takes affirmative steps to throw authorities off the scent when they look into his eligibility for the elevated allowances as contemplated by paragraph 30236.a. of DODPM.

12. Thus, even if one hypothetically accepts the proposition that a servicemember who accepts found money and who does nothing to correct the continued cash flow is not criminally liable (a proposition that we do not reach in this appeal, *but cf. United States v. Antonelli*, 35 MJ at 130–31 (Crawford, J., concurring in the result)), any *affirmative* action either to ensure the inappropriate continuation of the elevated allowances or to mislead officials in a way so as to co-opt a recoupment has more than civil-indebtedness ramifications. A central flaw in the opinion on remand is the apparent failure of the court below to recognize the distinction in-

herent in these vastly different scenarios of passivity versus affirmative activity.

### III

■ 13. Once again, then, we conclude that it is necessary for the Court of Criminal Appeals to exercise its responsibility under Article 66 of the UCMJ to determine whether the evidence is factually sufficient to prove that the accused had a duty to account for the with-dependent rate of allowances for the period in question and that he failed to do so. As we indicated in our original opinion, 35 MJ at 128–29, among other items of evidence, the court should consider the language on the certification form that appellant signed on November 4, 1987, and his entries thereon.

14. Similarly, that court must exercise its responsibility to determine whether the military judge submitted a theory of unlawful conversion to the members and, if so, whether the evidence is factually sufficient to support that theory—again, considering, among other pieces of evidence, the certification form signed on November 4, 1987. *See* 35 MJ at 129.

15. As to each inquiry, that court is to exercise its responsibility within the context of and upon application of the legal principles that we decided in 1992 and reaffirm today.

### IV

The decision of the United States Air Force Court of Military Review on further review setting aside the larceny conviction for the period December 1, 1986, through November 3, 1987, is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for further review consistent with this opinion.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.